*A. Ellison*, for the appellant.

Nov. Term, 1859.

THE INDIANA CENTRAL RAILWAY CO. v. HUDELSON.

---

--◆◦◦◦--

---

THE INDIANA CENTRAL RAILWAY COMPANY *v.* HUDELSON.

The plaintiff, without having procured a ticket, was crossing a side track of a railroad, in the night, to get upon a passenger train at its usual place of stopping, on the main track; but by the negligence of the employés of the company, a switch had been left open, and the train was thrown upon the side track, and ran against the plaintiff and broke his leg.

*Held*, 1. That he was not a passenger at the time of the injury.

2. That he had the same right to cross the side track as he did, that persons have to cross a railroad upon a public street or highway.

3. The company having the legal right to run their train upon the side track, it is immaterial whether it was run upon that track by accident or design, if run with due care. No greater care would be required in case of such accident than if the train were thrown upon the track by design.

Nov. Term,
1859.

THE INDIANA
CENTRAL
RAILWAY CO.
v.
HUDELSON.

Tuesday,
December 6.

4. If the train, in running up on the side track, was managed with due care,' the plaintiff cannot recover.

APPEAL from the *Wayne* Circuit Court.

WORDEN, J.—This was an action brought by the appellee against the company, to recover damages for an injury received by the plaintiff, in consequence of the alleged carelessness and negligence of the agents and servants of the company, in so running their engine and train of cars, that the plaintiff was run upon and his leg broken.

Trial by jury, verdict and judgment for the plaintiff.

Exceptions were taken, which properly present the questions involved.

The following is a brief statement of the facts of the case:

The depot or station-house of the company, at *Ogden*, in *Henry* county, is situated on the south side of the railroad. In this building is the ticket-office. Between this building and the main track, over which passenger trains usually run, is a side track connecting with the main track east, but not west. The two tracks are about nine feet apart. Between this side track and the main track is a platform for passengers to get on and off the cars. In going from the ticket-office to the platform mentioned, a person must cross the side track. The switch connecting the side track with the main track, is about two hundred and seventy feet east of the depot-building mentioned. On the afternoon of the 17th of *October*, 1856, the servants of the company had been using the side track, and had left the switch in such a situation as to throw the train coming from the east on to the side track, instead of coming in on the main track. On that evening, the plaintiff, desiring to take passage for *Indianapolis*, repaired to the ticket-office for a ticket; but the agent not having the office lighted up, and there not being time to light up and procure a ticket before the approaching train from the east would arrive, none was procured. The train came at about the usual time, half after seven o'clock, and, in consequence of the situation of the switch, ran in on the side track. The

Nov. Term,
1859.

THE INDIANA
CENTRAL
RAILWAY Co.
v.
HUDELSON.

plaintiff, upon the approach of the train, started towards the platform mentioned, and as he placed one foot upon the side track, and had raised the other to make another step, the cow-catcher struck the leg or ankle thus on the track, and broke it. The train approached rather slowly, the breaks being applied and the engine reversed, with a brilliant head-light burning. The train ran but a short distance after it struck the plaintiff, stopping about one hundred feet east of the usual stopping point when running in on the main track.

The charge of the Court to the jury, as to the negligence of the company which would render them liable, and as to the negligence of the plaintiff, which would deprive him of a recovery, was explicit, and mainly correct; but there is one point upon which we think an error was committed.

The following instructions were given, and exceptions taken, viz.:

"10. It was the duty of the railway company to keep the switch in proper order to pass the train on the track that it is intended to run on; and if it was left open by the track hands, or not properly looked to by those in the employ of the company whose business or duty it was to look to or attend it; and if, in consequence of its being left open, the train was improperly run in on the side track, when it was intended to be run on the main track, these would be acts of negligence on the part of the servants and employés of the railway company, from which the jury may infer the want of reasonable care; and if the train, in being so improperly run on the side track, or the locomotive thereof, struck the plaintiff when he was crossing the side track to the passenger platform for the purpose of going on the train as a passenger, and caused the injury complained of, the jury may find for the plaintiff, unless such injury was materially contributed to by the negligence or want of reasonable care on the part of the plaintiff, when, by the exercise of such reasonable care, he might have avoided the injury.

"11. If it was not intended to run the train on the side

Nov. Term,
1859.

THE INDIANA
CENTRAL
RAILWAY CO.
v.
HUDELSON.

track, and if the engineer of the locomotive, when the engine was approaching the switch-stand at the station, by the use of reasonable care, could have seen the switch was open, in time to have stopped the engine before running on the switch, or before reaching the station on the side track, it was his duty to have done so, and a failure to do so would be negligence."

The defendants asked the following instruction, which was refused, and exception taken:

"17. If the jury should find from the evidence, that the switch from the main track to the side track had been negligently left open by the section hands or persons having the repairs of the track in charge, in the afternoon or evening of the day on which the injury occurred to the plaintiff, and some one or two hours afterwards, the passenger train, without fault of the persons running it, ran it, in the night time, on the side track, and proper signals were given by the whistle of the engine, and the engine had a good head-light in front, and the plaintiff negligently, and without looking towards the approaching train, and knowing it was approaching, stepped on the side track and was run against by the engine, at the time as alleged in his complaint, and thereby materially contributed to the injury, he cannot recover in this suit."

As a question preliminary to the main one arising on the instructions given, and that refused, we may inquire whether the plaintiff, at the time of the injury, should be considered a passenger.

In Pierce on Am. Railr. Law, 264, it is said that "The peculiar liability of a railroad company, as a common carrier, for the safety of passengers, &c., rests on principles of public policy and the law of contracts, which have no application to injuries to parties to whom the company has assumed no such special obligations." "Collisions betwen a locomotive and persons crossing the track in carriages and on foot, where it intersects a street or highway, present a case where both the person and the company are exercising an equal legal right, independent of any contract or favor extended by one to the other. The individ-

ual has a right to cross the track, and the company has the right to cross the highway. This is not, on the one hand, the case of a passenger, in the carriage of whom the company's liability is governed by a contract express or implied, founded on an adequate consideration, which is broken by a neglect to use the highest degree of skill and diligence; nor is it the case of a wrongdoer unlawfully on the track, and having no claim but for wanton injury. It is the common occurrence of two parties holding equal, independent rights, the exercise of which by one, may result in consequential injury to the other. The duty of each, under such conditions, in conformity with the principles of natural justice, and municipal law, is to use ordinary care in the exercise of his own right, to avoid injury to the other. If, notwithstanding such care by both parties, an injury happen, it is a misfortune which must be borne by the sufferer alone."

The relation of carrier and passenger being founded in contract, express or implied, according to the above authority, it is clear that the plaintiff is not to be considered a passenger at the time of the accident, as no contract for his carriage, either express or implied, had then been entered into. Nor yet was he a trespasser or wrongdoer upon the track. The way provided by the company, for passengers, or persons designing to take passage, to go from the depot-building and ticket-office, to the platform from which to get on to the cars, led across the side track. The plaintiff, it seems to us, had the same right to cross it that he would have had to cross the track where it intersects a public street or highway. There seems to be no essential difference in the two cases. It may be admitted that the company "is bound to provide safe and sufficient means of access to its stations for the accommodation of passengers." Pierce on Am. Railr. Law, 474. The action is not founded on any neglect to provide such means of access, nor does it appear that the means provided were not safe and sufficient. Viewing the plaintiff, not as an actual passenger, but as having the right to cross the side track in the same manner as if he were upon a public street or

Nov. Term,
1859.

THE INDIANA
CENTRAL
RAILWAY CO.
v.
HUDELSON.

highway, we will proceed to examine the charges given, and that refused.

The proposition that the company had the legal right to run their train upon the side track, is not controverted by counsel for the appellee. Nor is it disputed by counsel for the appellant, that if they did so run upon the side track, they might be bound to exercise a greater degree of care than when running upon the main track, because of the greater danger of doing injury.

We think the defendants' liability, on the supposition that the plaintiff was guilty of no negligence, depends upon the manner in which the train was being run at the time and place of the injury, and not merely upon the fact that through the negligence of those in the employ of the company, in having left the switch open, the train was unintentionally thrown upon the side track. The company having the legal right to run their train upon the side track, it is wholly immaterial whether it was run upon that track by accident or by design, if run with due care, and without negligence. No greater degree of care would be required in running the train upon the switch track when taken by accident than when taken by design. It will scarcely be contended that if the train were to be run upon the side track designedly, and with proper care and caution, the company would be liable for any casualty that might happen to a person standing upon or crossing the track. Nor would they be liable for such casualty, if the train were to be run in a careful and proper manner, without negligence, though that track should be run upon in consequence of the switch having been carelessly left open.

To illustrate this proposition—suppose the switch had been five or ten miles east of *Ogden*, the place where the injury occurred, and from that point to *Ogden* there were two tracks, a main and a side track. Now suppose, when the train came along to the switch, that being open, it was thrown upon the side track, and on that track ran into *Ogden*. Now, if proper care and circumspection were used in running the train upon that track into *Ogden*, and at the place where the injury occurred, it is clear that the

Nov. Term,
1859.

THE INDIANA
CENTRAL
RAILWAY Co.
v.
HUDELSON.

company would not be liable, and it would seem to be wholly immaterial, in the case supposed, whether the side track was taken by design, or accidentally, in consequence of the switch having been negligently left open. The principle must be the same whether the switch be far off, or near the place where the accident occurred.

The fact that the side track was there, was notice to all persons cognizant of that fact, if not to all the world, that a train might be run upon it.

Admit that it was the carelessness of the company's agents, in leaving the switch open, that threw the train upon the side track. This carelessness caused to be done only that which the company had a perfect, legal right to do, viz., it caused the train to be run upon the side, instead of the main track. The company having the right to run their train upon the side track, if, in the exercise of that right, due care and prudence were observed on the part of those running the train, it is difficult to perceive on which legal principle the company could be held liable for such accident.

From the charges given, the jury might have understood, and probably did understand, that if it were not intended to run the train upon the side track, the negligence of the company's servants in leaving the switch open, was sufficient to render the company liable, without reference to the manner of running the train, whether carelessly and negligently, or with due caution and prudence.

Counsel for the appellee say, they "do not understand how a locomotive can be run with due care, if it is run unintentionally. We are not, however, prepared to say that a train may not be run with due care, both before leaving the main track, and after passing from it to a side track, although unintentionally thrown from the main to the side track in consequence of the negligence of others in leaving the switch in such a situation as to cause that result.

The charges should not have been given, as their tendency was to mislead the jury. The charge asked by the defendants appear to have been correct, and we see no rea-

son why it should not have been given.  For these reasons the judgment below must be reversed.

*Per Curiam.*—The judgment is reversed with costs. Cause remanded, &c.

*J. S. Newman* and *J. P. Siddall*, for the appellants (1).

*O. P. Morton*, *W. Grose*, *J. H. Mellett*, and *E. B. Martindale*, for the appellee (2).