WHITNEY, The ELI. See Case No. 4.345.

WHITNEY ARMS CO. (UNITED STATES RIFLE, ETC., CO. v.). See Case No. 16,-793.

## Case No. 17,597.

### WHITON v. CHICAGO & N. W. R. CO.

[2 Biss. 282.] [1]

Circuit Court, E. D. Wisconsin. April Term, 1870.[2]

ACCIDENT AT RAILROAD CROSSING — NEGLIGENCE AND CONTRIBUTORY NEGLIGENCE — EXCESSIVE SPEED — RINGING BELL — PROVINCE OF COURT AND JURY—NEW TRIAL—MEASURE OF DAMAGES.

1. Where three persons, having waited for a freight train to pass, at the crossing of a frequented street, then cross the track, and two of them are struck by a switch train on an adjoining track, and killed, there being at the time a strong wind blowing, the bell on the switch train not having been rung, and the survivor having neither seen nor heard the switch train until after the accident, the circumstances are not such as to warrant the court in instructing the jury in an action brought by the representative of one of the deceased persons that the plaintiff could not recover.

2. Although the freight train was running at a higher speed than allowed by law, and probably if it had not been passing, the accident would not have occurred. nevertheless the only effect of the passing of that train was to modify or influence the conduct of the others, and the fault of the freight train is too remote in law to constitute one of the causes of the accident.

3. This court is, however, not prepared to say that every person who, in a populous town at a railroad crossing, fails to pause and look up and down the track, is guilty of such negligence as to prevent a recovery for an injury inflicted by the flagrant wrong of those in charge of a passing train.

4. The bell should be rung not only before crossing a street, but so long as there is danger of encountering passers-by.

5. The courts are much influenced by the conduct of the defendant, and, if the wrong is flagrant, are inclined to hold that to be the cause of the injury.

6. While there are some things as to which it might be the duty of the court to charge that they constitute negligence, there are many others which the court must leave to the jury to

decide. The court properly charged the jury that if the bell of the switch train was not rung, that was negligence, and left it to them to decide whether the person injured had been negligent.

7. Where, on the objection of a party, competent evidence has been excluded, he cannot urge that as error on motion for a new trial.

8. Where the jury rendered a verdict for the highest sum allowed by statute. five thousand dollars. it being shown that the person killed was a superior woman—as wife, mother, and member of society—there is nothing in the amount of the verdict to authorize the court to interfere.

Motion for a new trial after a verdict by a jury for $5.000 damages for death of plaintiff's wife by alleged carelessness of the defendant.

Conger & Sloan. for plaintiff.

Pease & Ruger, for defendant.'

Before DRUMMOND. Circuit Judge, and MILLER, District Judge.

DRUMMOND, Circuit Judge. This is an action under the statute of this state brought by the plaintiff for the death of his wife, caused by the alleged wrongful act of the defendant. Mrs. Whiton and Mrs. Woodward, in December, 1864, resided near each other on Bluff street, in Janesville, in this state. One morning near Christmas of that year, they left home and proceeded along the north side of Bluff street, until they reached Academy street. They then turned south on the west side of Academy street until they arrived at the railway crossing. At that time there were four tracks crossing Academy street, on the same level, extending northeast and south-west, the street there running about north and south. The two most northwesterly tracks belonged to the Milwaukee & Prairie du Chien Railroad. and the other two to the defendant. When they arrived at the railroad crossing, a freight train was passing the street in a north-easterly direction, on the south track of the Milwaukee & Prairie du Chien Railroad, at a rate of speed unauthorized by the law of this state. Mrs. Whiton and Mrs. Woodward therefore stopped until the freight train had passed. Standing there with them, also waiting for the freight train, was Mr. Jacob C. Rice. the sole surviving witness of what immediately occurred. It was about eleven o'clock. The morning was quite cold, with a very strong wind blowing from the south-west. There was some snow falling at the time, and there were a few snow piles lying near the track. apparently previously thrown off the track. While the freight train was going up the track, a switch train was backing down in a south-west direction. on the south track of the defendant. The tender came first. then the engine, and next a freight car attached to the engine. Mr. Rice was standing very near the freight train as it crossed Academy street, and as soon as it passed. he instantly, with a quick step, crossed over the railroad

tracks, and after having crossed the tracks a rod or so, he heard a scream, turned round and saw that Mrs. Whiton and Mrs. Woodward had been struck by the tender of the switch train. Mrs. Woodward was almost instantly killed, and Mrs. Whiton, after lingering a few weeks, died from the effects of the injury. As Mr. Rice crossed he cast his eyes at the track, and saw nothing in the way, and so passed on till he was arrested by the cries of the ladies. He did not see the switch train before, nor as he crossed, and heard no signal bell from that train.

The questions submitted to the jury were: (1) Whether Mrs Whiton's death was caused by the negligence of those who had the management of the switch train; and (2) was Mrs. Whiton herself guilty of any fault or negligence which contributed to that result? And the jury having found negligence in the defendant, and none in Mrs. Whiton, the question is whether there is any error of fact or law to prevent judgment on the verdict. We think there is not.

In looking through the various objections made by the defendant to the rulings of the court in receiving or rejecting testimony on the trial, we see nothing material to the issue decided erroneously against the defendant, and we think under the facts of the case it would have been error for the court to instruct the jury as requested by the defendant, that the plaintiff could not recover.

As to the negligence of the defendant, the court in substance instructed the jury that it was the duty of those having the management of the switch train to cause the bell of the engine to be rung a sufficient time before crossing Academy street to give warning to any passengers on that street desirous of crossing, and to keep it ringing until the tender had crossed the street, and also that it was the duty of those having the management of the train to keep a proper lookout in the direction the train was moving, and particularly under the circumstances of the case—a freight train going up one of the tracks, the switch train just approaching a much frequented place, and a violent southwest wind blowing at the time.

As to the negligence of Mrs. Whiton, the court in substance instructed the jury that she was required to exercise that degree of prudence, care and caution incumbent on a person possessing ordinary reason and intelligence under the special circumstances of the case, having regard to the fact of its being a railroad crossing, and another train crossing the street, for which she had to wait in company with Mrs. Woodward, and therefore she should have used extra care, prudence and caution. The court declined to say to the jury how she must dispose of her limbs, her eyes or her ears, but left it to the jury to find whether she had been guilty of any fault which contributed to her death, and said that, if she had, the plaintiff could not recover even though the defendant had

been guilty of negligence. The court also told the jury before they could find a verdict against the defendant they must be satisfied its employés were guilty of negligence, and that such negligence caused her death. As to the damages, the court instructed the jury that they could give nothing for feeling, sympathy or mental suffering, but that they were restricted to the rule of pecuniary injury alone resulting from the death of Mrs. Whiton, to the plaintiff: that it was almost impossible to lay down any fixed rule on the subject; that it largely rested in the sound reason and discretion of the jury—taking all the facts of the case into consideration—her personal qualities, her ability to be useful and to earn money.

This is the general aspect of the case. It may be proper now to advert to some special objections taken to the rulings of the court in the instructions given and refused.

There were several instructions asked which proceeded on the assumption that the freight train, in running too fast on the Milwaukee & Prairie du Chien track, proximately caused the death of Mrs. Whiton. The instruction given on this point was that the only effect of the freight train being there under the circumstances mentioned was to modify or influence the conduct of those on the switch train, and of Mrs. Whiton, and consequently the court considered the fault of the freight train, as connected with the death of Mrs. Whiton, as too remote in law to be regarded as the cause of her death. We see no reason to change this opinion. Undoubtedly, it may be said that if the freight train had not been there Mrs. Whiton would not have been killed. So she might have escaped if Mrs. Woodward had not been with her, or if they had not followed directly after Mr. Rice.

It is insisted that if the bell of the switch train had been rung for some time before, it need not have been up to the time of crossing the street. The object of ringing the bell is to give warning. The passengers in this case were on the west side of Academy street; a freight train shut out the view of the switch train. As long as there was risk of encountering passengers, the bell should have been rung to attract their attention.

Many instructions requested by the defendant were to this effect—that it was the duty of Mrs. Whiton before attempting to cross the track to look carefully up and down to see what obstacle was in the way, and even to stop for that purpose, and if this was not done it was negligence. The court instructed the jury that Mrs. Whiton must have observed due care, caution and prudence. These imply needful and usual foresight and watchfulness. We are not prepared to say that any person who, in a populous town, at a railroad crossing, in walking on a street, shall fail to pause and look along the track, is guilty of such negligence as to prevent a recovery for injury inflicted by the flagrant

wrong of those on a passing train. We have to take men and women as they are, and judge of them by their conduct under such circumstances. Suppose the reason the person does not look up or down the track, is that the bell of the engine is not rung. And can an engine be permitted to recklessly run over passengers, because if they do not get out of the way they are in all cases guilty of contributory negligence? The very object of ringing the bell is to attract attention. It will often happen, as indeed observation proves, that persons walking over a railroad track on a public street of a town will be more or less pre-occupied, and those who control so powerful an instrument of destruction as a locomotive in motion, are required to ring the bell to make them watchful. It will be found on examination of the cases in those courts which will not permit a recovery where there has been any fault whatever on the part of the person injured, that they are very much influenced by the conduct of the other party. If the wrong is flagrant they are inclined to hold that to be the cause of the injury. A very striking illustration of this is to be seen in two cases recently decided in England in the court of exchequer, the one following the other in the same volume of reports. In the first the railway company was thought free from fault, and the rule as to contributory negligence by the deceased was stated with some stringency; but in the second, where the railroad company was guilty of gross negligence, it was held the case was properly left to the jury, although the evidence showed the deceased, as he crossed the track, was looking down on the ground.

In fact, while there are some things about which all intelligent men agree, and as to which it might be the duty of the court to charge that they constituted negligence, yet there are many others where the court must leave it to the jury to decide whether or not negligence is established, and therefore it is by no means uncommon to find a court in the same charge to a jury, declaring that if a certain fact exists it is negligence, and if another, that it is for the jury to determine; and this must be so as long as negligence in any of its bearings is a mixed question of law and fact. The court instructed the jury in this case if the bell of the engine of the switch train was not rung so as to give warning to Mrs. Whiton, it was negligence, and the court refused to instruct the jury that she had been guilty of negligence, but left that to the jury to determine. We think this was correct, and we see no reason for disturbing the verdict because on either point it was not warranted by the evidence. We think the testimony indicated that the bell of the engine was not rung as it approached Academy street so as to give warning to them on that street. Neither the engineer nor the fireman saw Mrs. Whiton or Mrs. Woodward before they were struck by

the tender; they therefore were not on the lookout for the street. As to the negligence of the employés of the defendant in the conduct of the switch train, there can be no doubt the finding of the jury was warranted by the evidence. Of the conduct of Mrs. Whiton at the moment we know nothing except what may be inferred from the result. No living witness, so far as we know, saw her from the instant that she moved to cross the tracks until she was struck. We do not know whether she glanced along the track, or saw the switch train, and if she did we are ignorant of the impression made on her mind—whether she thought it moving or standing, we cannot tell. She had to pass over about thirty feet, probably a little further, from the spot where she stood waiting for the freight train to cross, until she reached the track on which the switch train was moving. What was seen or heard in that brief time by Mrs. Whiton is very much matter of conjecture. The chances are that she and Mrs. Woodward followed Mr. Rice immediately, and while he, walking faster, escaped, they were killed. Now, if the bell of the engine had been ringing as they started, what would have been its effect on them? This as well as other facts connected with her conduct were left to the jury to decide.

It is also claimed by the defendant that since the trial it has been ascertained that Mrs. Whiton, while on the spot, and very soon after the accident, said she did not hear the bell, and inference is thence sought to be drawn that she did not see the switch train. The plaintiff offered to prove the declarations of Mrs. Whiton, and the defendant objected, and they at the time were excluded, subject, however, to the right on the part of the plaintiff to have the matter reconsidered. The opinion of the court on this point was not subsequently taken, and therefore the ruling remained as made at the instance of the defendant. We think it would be something unusual to grant a new trial to a party for the reason that the court had not admitted testimony excluded at his instance. We are induced to think the declarations were competent evidence, but we do not see how their exclusion injured the defendant. If the proof had been admitted, it seems to us, to say the least, it would have operated quite as much against the defendant as otherwise.

Various instructions were requested upon the subject of damages, all of which were refused, and the jury instructed as heretofore stated. It is confessedly a most difficult matter to deal with, and from the nature of the case does not admit of any fixed rules. The statute itself, while confining the recovery to the pecuniary injury resulting from the death, does not specify in what it shall consist. The jury in this case found the highest sum allowed by the law, five thousand dollars, and though the testimony bearing on this branch of the case was quite

indefinite, yet it showed clearly that Mrs. Whiton was a superior woman, as wife, mother, and member of society, and there is nothing in the amount of the verdict to authorize the court to interfere on that ground.

NOTE. This case was affirmed by the supreme court (13 Wall. [80 U. S.] 270). Company is bound to use care and dilligence to prevent injury to persons at crossings. Bradley v. Boston & M. R. Co.. 2 Cush. 539; Macon & W. R. Co. v. Davis, 18 Ga. 679; Augusta & S. R. Co. v. McElmurry, 24 Ga. 75; Barrett v. Midland R. Co., 1 Fost. & F. 361; Curtis v. Central Ry. [Case No. 3,501]. As to what constitutes negligence on the part of a passer-by at a crossing. consult Chicago & R. I. R. Co. v. Still, 19 Ill. 500; Beiseigal v. New York Cent. R. Co., 33 Barb. 429, s. c. 34 N. Y. 622; Milwaukee & C. R. Co. v. Hunter, 11 Wis. 160; Evansville & C. R. Co. v. Lowdermilk, 15 Ind. 120; Ohio & M. R. Co. v. Gullett. Id. 487; Wilds v. Hudson R. R. Co.. 29 N. Y. 315; Newson v. New York Cent. R. Co.. Id. 383; North Pennsylvania R. Co. v. Heileman, 49 Pa. St. 60; Catawissa R. Co. v. Armstrong, Id. 186; Galena & C. U. R. Co. v. Dill, 22 Ill. 271; Ernst v. Hudson R. R. Co.. 24 How. Prac. 97. Whether neglect to give signal is conclusive evidence of negligence. Galena & C. U. R. Co. v. Dill, 22 Ill. 271; Chicago & R. I. R. Co. v. Reid, 24 Ill. 144. Where no signal is given, effect of negligence of injured party. Steves v. Oswego & S. R. Co.. 18 N. Y. 422; Dascomb v. Buffalo & S. L. R. Co., 27 Barb. 221; McGrath v. Hudson R. R. Co.. 32 Barb. 144. The New York court of appeals has recently ruled that although a traveler must make vigilant use of his eyes and ears in approaching a railroad track, he is not certain if there is a train approaching, he is not bound to stop for the purpose of listening, nor, if in a vehicle. to get out and go forward upon the track, nor to stand up in the vehicle to get a better view of the track. Davis v. New York Cent. & H. R. R. Co.. 47 N. Y. 400. But as to what he must do. consult Gorton v. Erie Ry. Co., 45 N. Y. 660; Wilcox v. Rome, W. & O. R. Co.. 39 N. Y. 358. Consult also the following decisions in regard to the duty of travelers in crossing a railroad track. and of company in giving signals. etc.; Chicago & R. I. R. Co. v. Still, 19 Ill. 500; Chicago & N. W. R. Co. v. Sweeney, 52 Ill. 325; Chicago & A. R. Co. v. Gretzner, 46 Ill. 74; Toledo, W. & W. R. Co. v. Baddcley, 54 Ill. 19; Havens v. Erie Ry. Co., N. Y. 296, approving Ernst v. Hudson R. R. Co., 39 N. Y. 61; Wilcox v. Rome, W. & O. R. Co.. Id. 358.