## PARROTT v. NEW ORLEANS & N. E. R. CO.

(Circuit Court, E. D. Louisiana. June 27, 1894.)

**1. MASTER AND SERVANT—CONTRIBUTORY NEGLIGENCE OF SERVANT—PLEADING.**

The petition in an action against a railroad company for injuries to a foreman of a switching crew while uncoupling cars, resulting from a defect in defendant's roadbed, alleged that, in the performance of his duties as foreman, he was compelled to uncouple certain loaded cars, part of a train then in motion on defendant's railway, and while so doing was injured. *Held* that, it being prima facie negligence to go between cars of a moving train, such allegation, not stating any circumstances, either of special orders, general duty, or the necessities of the case, which required plaintiff to go between the cars, nor the rate of speed of the train, showed contributory negligence on his part, and rendered the petition bad.

**2. SAME—NEGLIGENCE OF MASTER—PLEADING.**

The petition in an action against a railroad company for injuries to an employé resulting from a defect in defendant's roadbed, alleged to have been either a defect in original construction, or caused by washing, did not aver that defendant had notice of the defect, or that it had existed for such a time and under such circumstances that defendant could be charged with notice. *Held* that, considering the defect as caused by washing, the petition was bad for want of such averments, and an allegation that the defect had continued for an unreasonable length of time, being an averment of a conclusion, did not supply the omission.

This was an action by Charles W. Parrott against the New Orleans & Northeastern Railroad Company for personal injuries. Defendant filed exceptions to plaintiff's petition.

O. B. Sansom, for plaintiff.

Harry H. Hall, for defendant.

PARDEE, Circuit Judge. The plaintiff, who was an employé of the defendant company, sues to recover damages for an injury resulting from and through a defect in the defendant's roadbed. In his petition, among other things not necessary to recite, he says:

"That heretofore, to wit, October 16, 1893, at the city of New Orleans, in said district, defendants were, and had been for a long time, carrying on the business of common carriers to and from said city of New Orleans; and then and there defendants were possessed of divers roadbeds, railways, appurtenances, and appliances, including a large number of cars and coaches, locomotive steam engines and tenders, all of which things defendants used and employed in and about their said business as common carriers. And defendants also hired and employed a large number of men, as switchmen, brakemen, and foremen, to go upon said cars and coaches, and upon said roadbed, to couple and uncouple cars and coaches, and generally it became and was necessary for all said switchmen and brakemen to couple and uncouple said cars and coaches while the same were in motion upon said railways; and then and there defendants hired and employed plaintiff as foreman of a certain switching crew, and, in discharging said duties as foreman, plaintiff was compelled and obliged to go upon and walk upon defendants' said roadbed, and among the rails there placed by defendants as part of their said railway, and to couple and uncouple said cars and coaches while the same might be in motion. That then and there it became and was defendants' duty to construct, maintain, and preserve all their said roadbed, railways, and appliances reasonably sufficient and safe for switchmen, brakemen, and foremen to walk upon and use while performing their said work and duties,—that is to say, coupling and uncoupling cars and coaches for defendants; but de-

fendants neglected their said duty, and neglected to maintain their said road-bed, railways, and appliances reasonably safe for defendants' switchmen, brakemen, and foremen to walk upon and use while performing their said du-ties and work for defendants. And plaintiff specially avers that defendants carelessly allowed and permitted a certain part of their said roadbed, and a certain appliance, commonly called a 'frog,' and certain rails there converging, situate and being on Press street, between Marais street and Urquhart street, in said city, to become and remain for an unreasonable length of time unsafe and dangerous to all switchmen, brakemen, and foremen whose duties com-pelled them to go upon said roadbed to couple and uncouple cars and coaches in motion. And plaintiff further avers that said roadbed, railways, and ap-pliances became and were unsafe and dangerous as aforesaid because no suffi-cient quantity of dirt, earth, or ballast had ever been placed or deposited upon said roadbed at the place last above mentioned, or if a sufficient quantity of earth, dirt, or ballast ever was there placed or deposited, the same was washed away or removed for an unreasonable length of time; and in conse-quence of the absence of said dirt, earth or ballast, a soft and slippery mud puddle formed and existed at the place last above mentioned, and so re-mained for an unreasonable length of time; and defendants also constructed and laid two certain rails at the place above mentioned, converging and lead-ing into the aforesaid appliance commonly called a 'frog,'—all of which things were supported by certain cross-ties lying and being in said mud pud-dle,—which converging rails, frog, and cross-ties were then and there, and had been for an unreasonable length of time, loose, moving, and slipping about in all directions; and the same became and were, for an unreasonable length of time, dangerous to the lives and limbs of all persons going upon said road-bed to couple or uncouple cars or coaches for defendants. And then and there, on the day and year aforesaid, plaintiff, in the performance of his duties as foreman, was compelled to uncouple and cut off three certain cars, laden with coal, then being part of a large train of freight cars then in motion upon defendants' said railway on Press street, between Marais and Urquhart streets aforesaid, for said cars to run off upon a side track of said railway; and plaintiff then and there, observing all reasonable care and caution, walked upon said roadbed to pull out the coupling pin from the drawhead of a cer-tain car (being the third car from the end of said train), and while so doing, and exercising all reasonable care and caution, plaintiff necessarily walked into said soft and slippery mud puddle, and then and there, in consequence of the slippery and dangerous condition of the said roadbed, and in conse-quence of the absence of a sufficient quantity of dirt, earth, or ballast, at the place above mentioned, plaintiff's right foot slipped forward and between said converging rails, and, notwithstanding plaintiff made all possible efforts to withdraw his said foot, it remained fast," etc.

The defendant company excepts to the petition on two grounds: First, that it shows the plaintiff was guilty of contributory negli-gence; second, that it does not show the negligence of the defend-ant company.

1. Contributory negligence is a defense, and the absence of it need not be proved. Railroad Co. *v.* Gladmon, 15 Wall. 410. Still, if the complaint against the railway company, by its statement of facts, shows that the plaintiff was himself guilty of negligence con-tributing to his injury, the complaint is bad, notwithstanding it may contain an averment that he was without fault. Railroad Co. *v.* Goldsmith, 47 Ind. 43.

It is prima facie negligence to go between the cars of a moving train. The plaintiff, in his petition, admits that he went between the cars of a moving freight train in order to uncouple them. He avers a general duty devolving on foremen, brakemen, and switch-men to go on the defendant's roadbed, and between cars when in motion, in order to couple or uncouple them, and he says:

"Plaintiff, in the performance of his duty as foreman, was compelled to uncouple and cut off three certain cars, laden with coal, then being part of a large train of freight cars then in motion upon defendant's said railway on Press street, between Marais and Urquhart streets aforesaid, for said cars to run off upon a side track of said railway; and plaintiff, then and there, observing all reasonable care and caution, walked upon said roadbed to pull out the coupling pin from the drawhead of a certain car, being the third car from the end of said train, and while so doing," etc.

He does not say that in order to uncouple these particular cars he was compelled, either by duty, orders of his superiors, or the necessity of the case, to go between the cars while in motion, nor does he aver at what rate of speed the train was moving. It is true he says that, in the performance of his duties as foreman, he was compelled to uncouple and cut off three certain cars, laden with coal, then in motion, but he does not say how or by what he was compelled to go between the cars. Certainly, without a rule or order of the company, or some extraordinary condition then existing, defendant's compulsion, so far as he alleges it, existed in his own mind, and with reference to the easiest way to perform the duty in question.

2. The petition avers that the defect in the roadbed was either from a defect in original construction, or a defect caused by washing, but it does not aver that the defendant company had notice of the defect, or that the same had existed for such a time and under such circumstances that the defendant company could be charged with notice, if not possessing actual notice. The general rule is that a pleading is to be construed against the pleader, and if this rule is applied in this case the defect in the roadbed must be considered as resulting from the cause most favorable to the defendant, i. e. by washing; and, if it was caused by washing, it follows that, to hold the defendant company responsible for negligence, it must either have been brought to the attention of the company, or have existed for such a time that the company's knowledge of it can be reasonably presumed. The plaintiff's averment that it had so remained for "an unreasonable length of time" is an averment of a conclusion, and not of a fact.

The plaintiff relies upon Snow v. Railroad Co., 8 Allen, 441, and Gardner v. Railroad Co., 150 U. S. 349, 14 Sup. Ct. 140. In Snow v. Railroad Co. the defect in the roadbed had existed for more than two months. The plaintiff had known of it for that length of time, and had complained of it to the repairer of the tracks of the defendant railroad. And when he stepped between the cars they were in motion, at a very slow rate, having been started on his signal; and the easing back of the engine, or motion of the cars, was necessary in order to uncouple, because it was an ascending grade. In Gardner v. Railroad Co., supra, the defect in the roadbed had existed for a month. The plaintiff was ordered to do certain coupling and uncoupling of cars, out of the line of his employment, and more dangerous. The injury occurred where there was a down grade, and the cars, according to necessity and general usage, were in slight motion at the time. The defect complained of was in a planking at the crossing of a thoroughfare or highway, and more or less

conspicuous. The last paragraph of the chief justice's opinion throws a flood of light on the matter in hand:

"Tested by this rule, we are of opinion that the case should have been left to the jury, under proper instructions, inasmuch as an examination of the record discloses that there was evidence tending to show that the crossing was in an unsafe condition; that the injury happened in consequence; that the defect was occasioned under such circumstances, and was such in itself, that its existence must have been known to defendant; that sufficient time for repairs had elapsed; and that the plaintiff was acting in obedience to orders in uncoupling at the place and time, and as he was; was ignorant of the special peril; and was in the exercise of due care."

In my opinion, in the present case the plaintiff's petition should show whether or not the defect in the roadbed which caused the injury was or was not known to him, and also whether the defect was known to the managing agents of the company, either by actual knowledge of the same, or by its existence for such a length of time, under circumstances more or less patent, from which notice to the company should be presumed.

The petition should also show such circumstances, either of special orders, general duty, or the necessities of the case, as required the plaintiff to go between the cars of a moving train at the time he was injured. The rate of speed at which the train was moving at the time plaintiff entered between the cars thereof in order to uncouple them is a material fact bearing on the question of negligence, under what is alleged to be the general duty of foremen, brakemen, and switchmen in the defendant's employment to enter between moving cars to couple or uncouple them.

Let the plaintiff amend within 10 days to meet the views herein expressed, or let the petition be dismissed.